IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | 1:18-CR-289-RP |
| HUGO CESAR VARGAS-OSORIO, | § § § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Hugo Vargas-Osorio's ("Vargas-Osorio") motion to dismiss the pending indictment. (Dkt. 29). Having considered the parties' briefs, the evidence, and the relevant law, the Court enters the following order.

**I. BACKGROUND**

Vargas-Osorio has been indicted with a single count of illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). (Dkt. 10). Specifically, the Government alleges that Vargas-Osorio is an alien who was found in the Travis County Jail on February 12, 2018, and that Vargas-Osorio was previously removed from the United States to Mexico on or about May 3, 2016. (Compl., Dkt. 1).

Vargas-Osorio is a citizen of Mexico. (Gov't. Resp., Dkt. 31, at 2). Immigration authorities first found him in February 2014 and served him with a notice to appear ("NTA") while he was in custody. (*See* NTA, Dkt. 29-1; Gov't. Resp., Dkt. 31, at 3). The NTA did not contain a date or time. (*See* NTA, Dkt. 29-1, at 1). Vargas-Osorio was held in custody until the hearing, where he appeared and participated. (*See* Gov't. Resp., Dkt. 31, at 3 n.3; Removal Order, Dkt. 29-2). At the hearing, Vargas-Osorio was ordered removed; he waived appeal. (Gov't. Resp., Dkt. 31, at 4; Order, Dkt. 29-2). This removal order was reinstated in February 2009. (Gov't. Resp., Dkt. 31, at 4). It is this removal order that forms the basis of Vargas-Osorio's indictment for illegal reentry.

1

Vargas-Osorio now seeks to collaterally challenge his removal order. Relying on the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Vargas-Osorio argues that his pending indictment for illegal reentry must be dismissed because his sole prior removal order was invalid. (Mot. Dismiss, Dkt. 29, at 1). Specifically, he contends that because he received a Notice to Appear that did not indicate the removal hearing's date and time as required by statute, that notice was invalid and the immigration judge who ordered his removal had no jurisdiction to do so. (*Id.* at 2–3). The Government filed a response. (Dkt. 31).

### III. DISCUSSION

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–38 (1987). After *Mendoza–Lopez*, the Court of Appeals for the Fifth Circuit held that to collaterally attack a prior removal order in a criminal proceeding, the alien must demonstrate that: "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez–Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002).

The Fifth Circuit regards this test as "effectively codified" in 8 U.S.C. § 1326(d). *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 n.13 (5th Cir. 2000). Section 1326(d) provides that an alien may not challenge the validity of a removal order unless the alien establishes that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). To successfully challenge a removal order, the alien must prove all three prongs. *United States v. Cordova–Soto*, 804 F.3d 714, 719 (5th Cir. 2015). "If the alien fails to establish one prong of

the three part test, the Court need not consider the others." *Id.* (quoting *United States v. Mendoza–Mata*, 322 F.3d 829, 832 (5th Cir. 2003)). The Fifth Circuit has also required a showing of prejudice. *Id.* at 719.[1] To show prejudice, the alien must show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Id.* (quoting *United States v. Benitez–Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999)). The Government argues that Vargas-Osorio fails to establish all three prongs and has failed to demonstrate prejudice. (Gov't. Resp., Dkt. 31). The Court addresses each requirement of 8 U.S.C. § 1326(d), and the question of prejudice, in turn.

## A. Fundamental Fairness

To collaterally attack a prior removal order in a criminal proceeding, a noncitizen must show that "the removal hearing was fundamentally unfair." *Cordova–Soto*, 804 F.3d at 718–19 (quoting 8 U.S.C. § 1326(d)(c)). Vargas-Osorio argues that his removal order was fundamentally unfair because the immigration judge who issued the order lacked jurisdiction to do so. (Mot. Dismiss, Dkt. 29, at 4–8). The Court will consider whether the immigration judge had jurisdiction over Vargas-Osorio's

---

[1] Vargas-Osorio has preserved for review whether he must show actual prejudice because the text of Section 1326 requires only exhaustion of administrative remedies, the deprivation of judicial review, and fundamental unfairness. (Mot. Dismiss, Dkt. 29, at 3 n.2). *Compare* 8 U.S.C. § 1326(d) ("[A]n alien may not challenge the validity of the deportation order . . . unless the alien demonstrates . . . (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.") *with United States v. Cordova–Soto*, 804 F.3d 714, 718–19 (5th Cir. 2015) ([T]o collaterally attack a prior removal order in a criminal proceeding, the alien must demonstrate . . . (1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice."). However, this Court assumes without deciding that, in general, a defendant must show prejudice in order to collaterally challenge a prior removal order, in light of the Fifth Circuit's consistent application of a prejudice requirement alongside the statutory test under § 1326(d). *See, e.g.*, *Cordova–Soto*, 804 F.3d at 719; *United States v. Lopez–Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002); *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000); *United States v. Benitez–Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999). Vargas-Osorio asserts in his motion that he satisfies the Fifth Circuit's articulation of the standard. (Mot. Dismiss, Dkt. 29, at 15–16).

removal hearing and, if the immigration judge lacked jurisdiction, whether the removal hearing was fundamentally unfair.

1. Jurisdiction of the Immigration Judge

Federal regulation provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). A charging document includes a NTA. *Id.* § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."). The statute governing removal proceedings defines a NTA as a "written notice" that "specif[ies]" certain information, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). In *Pereira*, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).'" *Pereira*, 138 S. Ct. at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)). "The plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." *Id.* at 2110.

In this case, Vargas-Osorio argues that without a date and time, the putative NTA he received in 2008 was not a NTA at all. (Mot. Dismiss, Dkt. 29, at 9–10). Without a NTA, Vargas-Osorio argues, there was no charging document, and without a charging document, jurisdiction never vested in the immigration judge who issued Vargas-Osorio's removal order. (*Id.*). The Government counters that *Pereira*'s reading of § 1229(a) is limited to the specific facts of that case, which concerned whether a NTA lacking the time and place of a removal hearing triggered the "stop-time rule" for certain discretionary immigration relief. (Gov't. Resp., Dkt. 31, at 9–17; *Pereira*, 138 S. Ct. at 2110). The Government contends that a document lacking the time and place of a removal hearing nevertheless meets the regulatory definition of a NTA, thereby vesting jurisdiction

with the immigration judge. (Gov't. Resp., Dkt. 31, at 13). Based on the plain language of the statute, as supported by the clear directive of the Supreme Court in *Pereira*, this Court finds that a notice to appear without a date and time is not a NTA and therefore cannot vest an immigration judge with jurisdiction.

Removal proceedings are regulated by statute under 8 U.S.C. § 1229a. The implementing regulations provide that "jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed." 8 C.F.R. § 1003.14(a). A charging document must "include a Notice to Appear." *Id.* § 1003.13.[2] Accordingly, a document that does not "include a Notice to Appear" is not a charging document under the regulations, and therefore cannot establish jurisdiction. "[R]emoval proceedings commence when the [Department of Homeland Security] files the appropriate charging document with the immigration court." *DeLeon–Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001) (concluding that "removal proceedings . . . commenced when the Notice to Appear was filed").

Both the statute and the regulations define a "Notice to Appear" for removal proceedings. The statute governing removal proceedings defines a Notice to Appear as a "written notice" that "specif[ies] . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The regulations that govern the jurisdiction of an Immigration Judge state that a Notice to Appear "must also include" a list of information that specifies all of the same information required by the statute under § 1229(a), except that the time and place of the removal proceeding are omitted. 8 C.F.R. § 1003.15(b). The regulations also state that "[i]n removal proceedings pursuant to

---

[2] "Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13.

5

section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." *Id.* § 1003.18(b).

The Government suggests that the regulations supply an alternative definition of a Notice to Appear, through which a Notice to Appear may vest an immigration judge with jurisdiction even though the NTA fails to meet the statutory definition. (*See* Gov't. Resp., Dkt. 31, at 19–23). The Court rejects this theory for several reasons.

First, a regulatory definition does not displace a statutory definition where the statute is unambiguous. "In the process of considering a regulation in relation to specific factual situations, a court may conclude the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control." *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). Here, the expressed intent of Congress is unambiguous. Section 1229(a) expressly provides that a Notice to Appear is a "written notice" that "specif[ies] . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Without a time and place, a notice fails to meet the requirements for a NTA under the statute. The Supreme Court affirmed that § 1229(a) is unambiguous in *Pereira*. "[T]he plain text, the statutory context, and common sense all lead inescapably and unambiguously" to the conclusion that "a notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2110 (internal citations and quotations omitted); *see also id.* at 2113–14. This Court concludes that Congress unambiguously intended that a Notice to Appear must always specify

6

the time and place of the removal hearing.³ Because the statute is unambiguous, the statutory definition must control.⁴

Second, *Pereira* held that the time-and-place requirement is "definitional" for a document that purports to be a notice to appear. *Pereira*, 138 S. Ct. at 2116. "[T]he omission of time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal. . . . Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive [the notice to appear] of its essential character." *Pereira*, 138 S. Ct. at 2116–17 (internal citations and quotations omitted). Although *Pereira* acknowledged that the issue before the Court involved a specific and "narrow" question relating to the stop-time rule, *id.* at 2111–12, the Supreme Court did not limit its construction of the Notice to Appear to the stop-time rule. "*Pereira* does not say that a putative notice to appear that omits the time and place of a removal hearing fails to trigger the stop-time rule—it says that such a document is not a notice to appear *at all*." *United States v. Valladares*, No. 1:17-CR-156-SS (W.D. Tex. Oct. 30, 2018) (Order, Dkt. 44, at 8).

*Pereira* explicitly states that the time and place requirement applies in every place where the term "Notice to Appear" is used in the statute: "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S. Ct. at 2116 (2018). This is a "straightforward understanding of the text." *Id.* "[G]iven the clarity of the plain language, we 'apply

---

³ As noted in *Pereira*, this requirement does not prevent the Government from revising the time and place of a removal hearing according to its ordinary administrative needs, as long as the Government "provides 'written notice . . . specifying . . . the new time or place of the proceedings' and the consequences of failing to appear." *Pereira*, 138 S. Ct. at 2119 (quoting 8 U.S.C. § 1229(a)(2)).

⁴ This is consistent with how other courts in our district have approached the issue. *See, e.g., United States v. Valladares*, No. 1:17-CR-156-SS (W.D. Tex. Oct. 30, 2018) (Order, Dkt. 44, at 11) ("Congress unambiguously intended for notices to appear to always include the time and place of removal hearings."); *United States v. Cruz–Jimenez*, No. 1:17-CR-63-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) (Order, Dkt. 31, at 10) (same).

7

the statute as it is written.'" *Pereira*, 138 S. Ct. at 2120 (quoting *Burrage v. United States*, 571 U.S. 204, 218 (2014)). This Court must apply the statutory definition of the NTA "as it is written." *Id.*

This analysis is further supported by the fact that *Pereira* considered and rejected the regulation's treatment of the time and place details as optional. The same regulation on which the Government relies provides in another section that a NTA shall include "the time, place and date of the initial removal hearing, *where practicable*." 8 C.F.R. § 1003.18(b) (emphasis added). In *Pereira*, the Supreme Court noted this provision, *id.* at 2111, weighed the Government's concern that including the date and time may be frequently *im*practicable, and concluded that "[t]hese practical considerations are meritless and do not justify departing from the statute's clear text." *Pereira*, 138 S. Ct. at 2118. Having considered whether the regulations might control in some circumstances, the Supreme Court rejected this possibility in favor of the statute's express requirements.

This Court finds that the Notice to Appear that initiates removal proceedings under the statute and the Notice to Appear that vests jurisdiction in an immigration judge under the implementing regulations refer to the same document. The statute and the regulations are addressing the same subject matter and the same proceedings. Moreover, "as noted in *Pereira*, there is no reason why the function of a notice to appear should affect the information that it must include." *United States v. Cruz–Jimenez*, No. 1:17-CR-63-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) (Dkt. 31, at 11) (citing *Pereira*, 138 S. Ct. at 2115 n.7).[5]

The Court further finds that Vargas-Osorio's appearance at his removal hearing does not cure the deficient notice he received. The Court will not invent an actual notice exception to § 1326(d) in light of the Supreme Court's clear directive that a notice lacking a date and time is "not a

---

[5] *See Pereira*, 138 S. Ct. at 2115 n.7 ("Even if a notice to appear functions as a 'charging document,' that is not mutually exclusive with the conclusion that a notice to appear serves another equally integral function: telling a noncitizen when and where to appear.")

notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2118. "[T]he statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings. A document that fails to include such information is not a notice to appear under section 1229(a)." *Id.* (internal citations and quotations omitted).

Finally, the Court finds that Vargas-Osorio's receipt of a subsequent Notice of Hearing ("NOH") containing a date and time for his removal hearing does not vest jurisdiction with the immigration judge. The Government argues that before *Pereira*, some courts of appeals "held that a Notice to Appear lacking the date and time of the hearing, together with the later served Notice of Hearing, w[as] together sufficient to meet the statutory definition under § 1229(a)(1)." (Gov't. Resp., Dkt. 31, at 25). *Pereira*, however, held that a notice to appear lacking a date and time is not a NTA under the statute. In this case, then, there is not a NTA and a NOH that could have together supplied the immigration judge with jurisdiction because there is not a NTA.

Moreover, the Government contends that the defect "cured" by the NOH is the lack of notice in the NTA. (*Id.*). But the Government conflates the concept of notice with the concept of jurisdiction. As discussed above, federal regulation provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). A charging document includes a NTA, but not a NOH. *Id.* § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."). Accordingly, a Notice of Hearing cannot serve as a "charging document" vesting the immigration judge with jurisdiction under the statute. And, as stated above, the Court will not invent an actual notice exception to § 1326(d).

9

In sum, the Government has not raised any persuasive arguments for replacing the plain statutory requirements under § 1229(a) with the regulation's requirements in 8 U.S.C. § 1003.15(b). This Court must apply the statutory definition of the NTA "as it is written." *Pereira*, 138 S. Ct. at 2120 (quoting *Burrage v. United States*, 571 U.S. 204, 218 (2014)). "A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2113 (internal citations and quotations omitted).

Based on the plain language of the statute, the Court concludes that a Notice to Appear must include the time and place of the removal proceedings in order to constitute the appropriate charging document that vests the immigration court with jurisdiction. Because the notice that Vargas-Osorio received was not a Notice to Appear, jurisdiction never vested with the immigration judge.

## 2. Fundamental Fairness

The Court must now consider whether it is fundamentally fair for a removal proceeding to be conducted before an immigration judge without jurisdiction. Vargas-Osorio contends that it is not. (Mot. Dismiss, Dkt. 29, at 6). This Court agrees.

"Fundamental fairness is a question of procedure." *Lopez–Ortiz*, 313 F.3d at 230 (cleaned up). For removal hearings, "due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953)).

The removal hearing in this case fails to satisfy the second and third requirements for fundamental fairness. Although Vargas-Osorio attended his removal hearing and, in that sense, had

an opportunity to be heard,[6] his hearing is void for lack of jurisdiction and his opportunity to be heard was not a fair one. "[J]urisdictional defects render a judgment void." *Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998). A void judgment is not a hearing that comports with due process and it is not a fair opportunity to be heard. Courts have a duty to ensure that "jurisdiction . . . defined and limited by statute, is not exceeded." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *see also Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930) ("[I]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it.").[7]

In *Mendoza–Lopez*—which recognized a due process right to collaterally challenge a prior removal order as a predicate to a § 1326 charge—the Supreme Court analogized fundamental unfairness in removal proceedings to those in criminal proceedings. *See Mendoza–Lopez*, 481 U.S. at 849 n.17. The Supreme Court declined to enumerate examples but specifically contemplated that certain procedural errors are "so fundamental" that the result of the hearing in which they took place may not "support a criminal conviction." *Id.* The Court finds that a void order resulting from an *ultra vires* proceeding is one such fundamental error.

The Government argues that even if the defect in the NTA implicates the subject matter jurisdiction of the immigration judge, Vargas-Osorio has forfeited this claim because "[i]mmigration courts—which constitute part of an administrative agency under the auspices of DOJ—are neither Article I nor Article III courts." (Gov't. Resp., Dkt. 31, at 23). The Government cites only two cases in support of this argument, neither of which are binding on the Court, and neither of which pertain

---

[6] (*See* NTA, Dkt. 29-1; Order, Dkt. 29-2; Gov't. Resp., Dkt. 31, at 3).

[7] The Court declines to find that Vargas-Osorio's attendance at the hearing cured its fundamental unfairness. A party cannot waive a tribunal's lack of subject matter jurisdiction. "Subject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Marco v. United States*, No. 1:09-CV-761, 2010 WL 3992113, at *7 (S.D. Ohio Oct. 12, 2010) (citing *Union Pac. Ry. Co. v. Bhd. of Loco. Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009) (concluding that the Immigration Judge's "jurisdiction" under § 1003.14 refers to subject matter jurisdiction).

11

to the Government's argument. The first case, *Sohani v. Gonzales*, 191 F. App'x 258 (5th Cir. 2006), is an unpublished, non-binding opinion that predates *Pereira* in which the court concludes in a single sentence that a noncitizen had waived his right to challenge the immigration judge's jurisdiction because he had conceded his removability and waived his right to appeal. *Id.* at 259. The court says nothing about the appropriateness of waiving challenges to the jurisdiction of a court that is neither an Article I nor an Article III court. The other case, *Campos–Luna v. Lynch*, 643 F. App'x 540 (6th Cir, 2016), states without any citation that challenges to the jurisdiction of Article I courts—which the Government asserts an immigration court is *not*—may be waived. *See id.* at 542–43. The Court is therefore unpersuaded by the Government's argument, particularly in light of the Court's duty to ensure that "jurisdiction . . . defined and limited by statute, is not exceeded," *Mottley*, 211 U.S. at 152, and especially where, as here, the jurisdictional limitation arises from a "fundamental" defect used to support a "criminal conviction," *Mendoza-Lopez*, 481 U.S. at 849 n.17.

The Court therefore concludes that because the immigration judge lacked jurisdiction over the removal proceedings, the removal hearing was fundamentally unfair and cannot support a criminal conviction. Vargas-Osorio has satisfied this first requirement to collaterally attack his prior removal order. *See Cordova–Soto*, 804 F.3d at 718–19 (quoting 8 U.S.C. § 1326(d)(c)). The Court next considers whether Vargas-Osorio has satisfied the remaining requirements for his collateral challenge.

B. *Right of Judicial Review*

Under 8 U.S.C. § 1326, a noncitizen bringing a collateral challenge must next show that the removal hearing "effectively eliminated [his] right . . . to challenge the hearing by means of judicial review of the order." *Cordova–Soto*, 804 F.3d at 718–19 (citing 8 U.S.C. § 1326(d)(b)). The Government argues that Vargas-Osorio makes no showing that he was deprived of the right to meaningful judicial review. (Gov't. Resp., Dkt. 31, at 6–8). Vargas-Osorio argues that he was not

required to seek judicial review because the administrative proceedings themselves were void. (Mot. Dismiss, Dkt. 29, at 14–15).

Certain procedural errors "are so fundamental that they may functionally deprive the alien of judicial review." *Mendoza–Lopez*, 481 U.S. at 849 n.17. "While the procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial, analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations." *Id.* (citing *Rose v. Clark*, 478 U.S. 570, 577 (1986) (analogizing to fundamental procedural errors in criminal proceedings, such as use of a coerced confession or adjudication by a biased judge)).

Here, the immigration judge did not have jurisdiction over the proceeding but rendered and enforced a removal order nonetheless. As a result, there was no valid order from which Vargas-Osorio could seek an appeal. This fundamental procedural defect "functionally deprived [Vargas-Osorio] of judicial review." *See Mendoza–Lopez*, 481 U.S. at 849 n.17. As in *Mendoza–Lopez*, "[t]he fundamental procedural defects of the deportation hearing in this case rendered direct review of the Immigration Judge's determination unavailable." 481 U.S. at 841 (concluding that respondents were completely deprived of judicial review where immigration judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation.). *See also Puc–Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) ("When the IJ lacks jurisdiction, his decisions are nullities.").[8] The Court concludes that Vargas-Osorio's collateral challenge here is not barred because the void proceedings functionally deprived him of judicial review.

---

[8] The circumstances here are also analogous to the exhaustion analysis in *United States v. Montano–Bentancourt*, 151 F. Supp. 2d 794, 798 (W.D. Tex. 2001). There, the defendant was not given notice of the time, date, and place of his removal hearing, and then ordered removed in absentia. Applying the Fifth Circuit's three-part test, the district court found that a defendant's collateral challenge to his deportation order was not barred by

*C. Exhaustion of Administrative Remedies*

Finally, a noncitizen must show that he has "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). The Government argues that Vargas-Osorio made no attempt to exhaust administrative remedies. (Gov't. Resp., Dkt. 31, at 6–8). The Government asserts that Vargas-Osorio cannot meet the exhaustion requirement because he waived appeal in the underlying removal proceedings. (*Id.*). Vargas-Osorio argues that he was not required to exhaust his administrative remedies because the administrative proceedings themselves were void. (Mot. Dismiss, Dkt. 29, at 14–15).

Where a judgment is "void for lack of jurisdiction . . . [a] defendant is always free to ignore the judicial proceedings . . . and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)) (emphasis in original). *See also Reitnauer*, 152 F.3d at 344 n.12.

In the Fifth Circuit, "[e]ven when exhaustion is a jurisdictional bar, [the Fifth Circuit] recognizes an exception 'when administrative remedies are inadequate.'" *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir. 2001) (quoting *Ramirez–Osorio v. INS*, 745 F.2d 937, 939 (5th Cir. 1984) (citing *NLRB v. Indus. Union of Marine and Shipbuilding Workers of Am.*, 391 U.S. 418, 426 n. 8 (1968)); *see also S. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enf.*, 20 F.3d 1418, 1424 (6th Cir. 1994) (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) ("'Exhaustion is not required . . . where the administrative proceeding would be void.'")); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988) (citations and internal quotations omitted) ("Traditional exhaustion

---

the exhaustion requirement because there were no administrative remedies "available" to him prior to execution of the deportation order. *Id.* (quoting 8 U.S.C. § 1326(d)).

principles do include an exception for instances when resort to the administrative route is futile or the remedy inadequate.").

Under that exception, a defendant need not show exhaustion of administrative remedies where "any attempt would have been futile based on the state of the law at that time." *United States v. Ojeda–Escobar*, 218 F. Supp. 2d 839, 844 (W.D. Tex. 2002) (citing *Goonsuwan*, 252 F.3d at 389). In this case, at the time when Vargas-Osorio was removed in May 2008, the Fifth Circuit had allowed an actual notice exception to the date and time requirement for a statutorily deficient NTA in an unpublished 2007 opinion. *See Mehdi v. Gonzales*, 216 F. App'x 412, 414 (5th Cir. 2007). The Government argues that Vargas-Osorio received actual notice after receiving the deficient NTA because he was held in custody until the hearing. (Gov't. Resp., Dkt. 31, at 3 n.2; Order, Dkt. 29-2). Accordingly, based on the state of the law at that time and before *Pereira* was decided, any attempt to appeal by Vargas-Osorio would have been futile. He therefore need not demonstrate exhaustion of administrative remedies under 8 U.S.C. § 1326(d)(1). *See Ojeda–Escobar*, 218 F. Supp. 2d at 844 (citing *Goonsuwan*, 252 F.3d at 389).

### D. *Prejudice*

In a collateral challenge to a § 1326 prosecution in the Fifth Circuit, the general test for prejudice requires a noncitizen to show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Cordova–Soto*, 804 F.3d at 718–19 (quoting *Benitez–Villafuerte*, 186 F.3d at 658–59). In other words, "[i]f the defendant was legally deportable and, despite the . . . errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." *Benitez–Villafuerte*, 186 F.3d at 659. Vargas-Osorio argues he was prejudiced because he was "ordered removed when the immigration court had no authority to issue such an order." (Mot. Dismiss, Dkt. 29, at 15). Vargas-Osorio contends that he was not "legally deportable" under *Benitez–Villafuerte* "because the immigration court did not have

15

jurisdiction over him." (*Id.*) (citing *Benitez–Villafuerte*, 186 F.3d at 659). The Government counters that because Vargas-Osorio had admitted his removability and waived appeal, he would have been removed regardless of whether the NTA contained the proper date and time of his removal hearing. (Gov't. Resp., Dkt. 31, at 28–29).

However, the Fifth Circuit's general test for prejudice in a collateral challenge to a § 1326 prosecution derives from cases in which there was no dispute as to the jurisdiction of the immigration judge. *See, e.g., Cordova–Soto*, 804 F.3d at 719; *Lopez–Ortiz*, 313 F.3d at 229; *Lopez–Vasquez*, 227 F.3d at 483; *United States v. Encarnacion–Galvez*, 964 F.2d 402, 409 (5th Cir. 1992). As the Fifth Circuit noted in *Benitez–Villafuerte*, the Supreme Court has recognized that some removal proceedings might be "so fundamentally unfair that [the petitioner] need not show actual prejudice." *Benitez–Villafuerte*, 186 F.3d at 659 (citing *Mendoza–Lopez*, 481 U.S. at 839 n.17). In *Mendoza–Lopez*, the Supreme Court allowed collateral attack to a § 1326 indictment without a showing of prejudice. The Supreme Court explained that "[b]ecause respondents were deprived of their rights to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction, and the dismissal of the indictments against them was therefore proper." *Mendoza–Lopez*, 481 U.S. at 842. The same principle applies here. Because the immigration judge lacked jurisdiction, "the deportation proceeding in which these events occurred may not be used to support a criminal conviction." *See id.* The Court concludes that a removal proceeding in which the immigration judge lacked jurisdiction is so fundamentally unfair that Vargas-Osorio need not show prejudice. Enforcing an invalid removal order to make Vargas-Osorio eligible for criminal prosecution under § 1326 would offend due process standards of fundamental fairness, and this Court declines to do so.

The Court concludes that Vargas-Osorio has met his burden to collaterally attack the removal order under 8 U.S.C. § 1326(d) and the Fifth Circuit's due process standard. *See Benitez–Villafuerte*, 186 F.3d at 659 (citing *Mendoza–Lopez*, 481 U.S. at 839 n.17).

*E. Remedy*

Finally, the Government argues that even if Vargas-Osorio's collateral challenge is successful, the proper remedy is not dismissal of the indictment but exclusion of the indictment from evidence because the Government can still prove the fact of prior removal even if the prior removal order is unlawful. (Gov't. Resp., Dkt. 31, at 33–34, 37–38). In support of this position, the Government cites *Mendoza-Lopez* and a handful of appellate opinions stating that the lawfulness of a prior removal order is not an element of a § 1326 offense. (*Id.* at 33–34 (citing *Mendoza-Lopez*, 481 U.S. at 834–35; *United States v. Earle*, 488 F.3d 537, 547 (1st Cir. 2007); *United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998); *United States v. Torres-Sanchez*, 68 F.3d 227, 229 (8th Cir. 1995); *United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir. 1989))). According to the Government, it "only needs to prove the fact of a prior removal," which it can do even if Vargas-Osorio's prior removal order is invalid. (Gov't. Resp., Dkt. 31, at 38).

The Court disagrees with the Government's interpretation of its cited authority. *Mendoza-Lopez* considers whether a lawful deportation order is an element of § 1326 in its analysis of whether the statute itself provides for a challenge to the validity of a deportation order. *Mendoza-Lopez*, 481 U.S. at 834–35. In concluding that lawfulness is not an element, the court decided only that the right of collateral attack does not derive from the statute. *Id.* at 837. As discussed above, the court went on to find a constitutional right of collateral attack. *Id.* at 837–42. After finding that the respondents' collateral attack should succeed, *id.* at 840, the court then affirmed the court of appeals' dismissal of

17

the indictments against them, *id.* at 842. Under *Mendoza-Lopez*, then, dismissal of an indictment is the proper remedy for a successful collateral attack of a prior removal order.

None of the appellate decisions cited by the Government hold to the contrary. Several of them are inapposite, since they find that the alien's collateral attack fails. *Paredes-Batista*, 140 F.3d at 379; *Torres-Sanchez*, 68 F.3d at 232; *Holland*, 876 F.2d at 1537. Others consider only whether lawfulness must be found by a jury. *Earle*, 488 F.3d at 547; *Alvarado-Delgado*, 98 F.3d at 493. Meanwhile, courts have stated that only a valid deportation order can sustain a § 1326 conviction. *See United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014) (discussing "the uncontroversial proposition that the validity of a removal or deportation order is always a predicate to the crime because the deportation must be valid, legal, and comport with due process requirements to sustain a conviction under Section 1326"); *United States v. Fermin-Rodriguez*, 5 F. Supp. 2d 157, 164 (S.D.N.Y. 1998) (holding that "an alien has not been 'deported' for the purposes of § 1326 if he was removed from the country by the INS without a facially valid deportation order"). Unsurprisingly, in light of *Mendoza-Lopez*, courts routinely dismiss the underlying indictment in a § 1326 case upon finding a successful collateral attack on the predicate removal order. *See United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018); *United States v. Hasanaj*, 04-80174, 2005 WL 1774097, at \*3 (E.D. Mich. July 26, 2005); *United States v. Garcia-Jurado*, 281 F. Supp. 2d 498, 515 (E.D.N.Y. 2003). Dismissal is the appropriate remedy here.

### III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Vargas-Osorio's Motion to Dismiss, (Dkt. 29), is **GRANTED**. Accordingly, **IT IS ORDERED** that the indictment in this matter, (Dkt. 10), is **DISMISSED WITH PREJUDICE**.

This case is **CLOSED**.

**SIGNED** on November 28, 2018.

                                                                                    _____
                                                                                    ROBERT PITMAN
                                                                                    UNITED STATES DISTRICT JUDGE